Good morning. I'm Jameson Edsel for the appellant, Diego Becerra-Paez. May it please the court, the district court's reliance on the law of the case doctrine to preclude appellant from bringing his, attempting to plead his claims here was improper for two major reasons. The first reason is that Diego Becerra-Paez was not a plaintiff in the previous case. He was not a party and he was not in any way represented in that action. So under the Supreme Court's decision in Taylor v. Sergill where they go through all of the doctrines that are available for non-party preclusion, this case doesn't fit into any of them. Can I, I'm sorry to jump in, but I understand why you object to the district court's invocation of the law of the case, but whether it's law of the case or de novo reviewed by the district court, it's still reviewable de novo by us. Absolutely. So why does it matter whether we got here through law of the case or some other rule? And shouldn't we just be reviewing the merits of the district court's decision, assuming that it relied on the prior district court's rule? Sure, yeah. We can absolutely do that. We think, obviously, there's no secret here. There is now a disagreement between this court's precedent in Renasco v. NYU and the New York Appellate Division's two decisions in Croce and McCudden. So we think there's an easy solution to that issue, which is you could certify the question to the New York Court of Appeals. This court actually did that once already in Beck v. Manhattan, but the case never played out because it settled while it was on the way there. But the New York Court of Appeals, once it's a way in, they accepted the question. The state of the law today is the same as it was then. There hasn't been any — Surely, surely one consideration on certifying a question is whether that question is likely to reach the New York Court of Appeals through the state court processes in the usual course. And in McCudden, there's a dissent. It's all set up for them to take it. They'll either take it or they won't. If they'll take it, they don't need it from us. If they don't take it, then why should we ask them again to take it? Those are good questions. I think one reason is there's a clash right now in the federal — between the federal and state outcomes or precedents. We have Renasco. It's a head-on collision. So if you're not going to certify the question, I think what you would have to do here is vacate and remand, because the district court didn't follow your precedent. The district court applied Pauson as law of the case. And if you go back through — we kind of do this exercise in our brief, but if you go back — But we follow our precedent. You should follow your precedent. So you should vacate and remand, because Pauson — the ruling in Pauson is not consistent with the way this court decided the Renasco case and the two cases that followed it, Yodice and then Manhattan v. Beck. Can I just ask, if we were to consider certifying — and I understand your argument about just following our precedent, but given the history here, we don't like to send things over that won't reach their destination for whatever reasons. Whether the law of the case doctrine applies or not, there just seem to be repeated actions against Syracuse that don't make it — some of which seem to be voluntarily withdrawn. Is this a case that's likely to be — to go the whole distance? Well, yes. We're here now. We absolutely want to go the distance. We want to get this decided. Many of these cases have settled once they get through the initial pleading stage. But personally, I'm committed to running this case out as far as we can take it. Many of the prior dismissals occurred, I think, because some plaintiffs had some cold feet when discovery started. There were also some people who were concerned about the cases showing up in the media when they were entering the job market. So these things happen all the time in class-action litigation. We do have a plaintiff now who's made it this far. I see no problem with — I mean, we — as you point out, we took a very similar issue, and we offered it to the New York Court of Appeals, and that misfired. It did. As for cold feet, I mean, people — I don't think we'll be — So there's always the prospect that the case will settle. And these cases do seem to be susceptible to settlement. And have you guys been to the Civil Appeals Management Program at this court? I don't think so. I'm not positive. I don't believe that we've done that here. But, you know, we still have the question right now, which is, what do we do with the district court's decision? I think there's two great options before you. The best option, in my mind, is certify the question so we hear from the New York Court of Appeals and then the federal and state courts come into agreement. There's no more of this clash. Or you can vacate and remand and say you need to follow Renasville. Can I ask a question that's specific to this case? Under New York law, an element of breach of contract is damages. Even if you can show an implied contract and a breach, you have to show damages just to get a cause of action. If it's the case that your pleadings on their face incorporate documents that reflect that the cost for the online program is the same as the cost for the in-person program, why doesn't that defeat your claim to damages even at the pleading stage and require dismissal for that reason? Because the price that the plaintiff paid is only one factor here. There's what they didn't get for what they did pay. So even if you're buying two, there's two things at different prices or, excuse me, two things at the same price, but they're different. The plaintiff or the one party to the contract picks one and then they don't get it. It doesn't matter that the other option was the same price. But does it not? I mean, if we're valuing damages, we're not looking at subjective damages. This is a contract case, right? So we'd be looking for some sort of objective measure of what the value is of what they got compared to what they thought they were getting. And if it turns out that the price that's assigned to what they got is the same as what they paid, how do we deal with that? We have experts that actually survey students and they say, if you were at point A in time, how much value would you put on, say, being able to live on campus and see your friends every day, go to the gym, use these resources that are part of your tuition? We have experts to do that. So the actual tuition charge isn't dispositive of the damages question. It might be a data point, but it doesn't. No. And, I mean, obviously I think we want to get there through normal litigation. We've made it to the class certification stage in plenty of these cases, although usually that's about the point in time where they would settle. But there are ways to do this. There are ways to value that. We have experts for that. But I'll save the rest of my time for thought. Good morning, and may it please the Court. Lauren Hartz for Syracuse University. The district court reached the right result under New York law when it dismissed the plaintiff's state law claims, and this court can affirm that decision without certifying any question to the New York Court of Appeals. I want to pick up with Beck v. Manhattan College, which was this court's most recent exploration of these issues. I think Beck was absolutely right when it held that this court is not free to simply apply RENASCO in disregard of subsequent cases from the Second Department and the Fourth Department in Croce and McCudden, which would effectively mean that if plaintiff had brought his claims in state court, they would have failed, but because he brought them in federal court, he might proceed. So at that point, that takes off the table, the notion that we would simply apply RENASCO to reverse the decision below, and the question becomes, do we need to certify, or can this court simply affirm the decision below? And we would submit that the court can affirm the decision below without the need for certification for a number of decisions. There is a discretionary analysis that this court undertook in Beck and that it undertakes again any time that it sits in diversity jurisdiction and has the task of predicting how New York state courts would apply New York state law based on the material in front of the court. And again, there are a number of circumstances different than in Beck that we think require a different result here. First of all, there is, of course, the absence in the 12 months since this court issued the Beck decision of any New York state court decision that casts any doubt on Croce and McCudden being the correct articulation and application of state law on the specific question about the implied-in-fact contract between a university and its students. The McCudden decision was 3-2, and as your adversary points out, RENASCO is broadly consistent with how other circuits have interpreted various states' law of implied contracts. So that signals to me that the question is close. Do you disagree with that? Well, first of all, Your Honor, I mean, this court's RENASCO decision was 2-1, but I think we need to take the majority decision. I would also say New York has, for over a century, had a developed and defined body of law about implied-contract claims that is different from the law in other jurisdictions where sister circuits have reached a different conclusion. And in particular, the policy of the State of New York and its courts is that we are very reluctant to interfere with the relationship between a university and its students. And so unlike, for example, D.C. law in the Schaeffer decision or the law of other jurisdictions that other circuits have applied, New York courts have said loud and clear for decades, we do not impliedly limit the prerogatives of an academic institution by custom. What we need is a specific written promise in certain designated materials. Don't those cases rely upon features of the courses, the teaching, the content of the courses rather than the physical facilities? Are you referring to the cases from sister circuits, Your Honor? No, no, no. I'm talking about cases you're talking about that refuse to interfere with the academic process. Are they really talking about grading and coursework and such rather than the kind of thing we're talking about here, which is the availability of facilities? They are both, Your Honor. And I think what we see across the board, as I said, is a reluctance under state law for courts to interfere with their relationships. Certainly there is a strand of cases that apply that discretion to mean things like, we're not going to second-guess whether this candidate is appropriate for tenure or whether this candidate's dissertation warrants a Ph.D. But we also see in this context of the university providing services to an institution in exchange for tuition that what courts need and want to see is a specific promise. Lest we open the floodgates and have a deluge of cases in courts where students say, I expected this, it wasn't what I expected, and therefore I'm stating a breach of contract claim. So the deference that we afford is not limited to sort of pure academic questions. It applies much more broadly to the question of, in this implied-in-fact contract that state law is constructing to recognize that a university owes something to its students in exchange for tuition, what is the pleading bar that we're going to require the student to plead? And that is a high bar. That's, of course, what we see in Croce and McCutcheon. And I also want to, sort of going back-to-back and going back to Renasco, talk about how deficient the pleading is here relative to either of those cases and even, frankly, relative to Croce and McCutcheon. And let's take a step back and recognize there is perhaps no plaintiff and no plaintiff's counsel in the State of New York better equipped to state a claim than this one. They filed this case after Renasco, after Goldberg, after Croce, after they had litigated five prior cases against Syracuse University, including one that went virtually through all of discovery. What do we have? We have a complaint that doesn't say what program the plaintiff was in. It doesn't say what classes he was taking. It doesn't even say if the classes that he was in at the start of the semester were taking place in person or online. And it certainly doesn't say anything about unique impacts to him, like the proposed What does that have to do with whether there was a breach, rather than trying to figure out the principle on which one determines if there's a contract in the first place? I would direct the Court to the Renasco decision in page 198 to 199, where the Court is in the heart of the breach of contract analysis for the proposed plaintiff in that case. The proposed plaintiff in that case was a Tisch student in a dance program. And not as background, but in the heart of the analysis, the Court points out the lack of any, excuse me, the Court points out the presence there, and lack here, I would say, of any impact on the student. I think we could interpret that analysis as going to the materiality of those conditions and the likelihood that if at the start of the semester we had sat down Tisch administrators, and we had sat down the student, and we had said, Are you sure that you intend these dance classes to be in person? Is that really what tuition is saying for? Then in that situation they would have said yes, because of how serious the impact would have been on students in that case. And I think that's a... Isn't it odd, apparently, that these $100,000 arrangements don't seem to have any written contracts? Well, Your Honor, I think that... I mean, I'm not just speaking about Syracuse. I'm speaking about really all the universities. Yes, and, you know, certainly, Your Honor, there are in some cases explicit contracts that govern certain situations. So take meal plans and housing. We had express contracts, and we provided tuition refunds because those were services that we could not provide. But I think going to the heart of your question, Your Honor, we recognize we are not making widgets at Syracuse University. We are educating the next generation. We need flexibility to do that. We need room for innovation. This is not something that we can reduce to a black-and-white contract, but we do agree to deal with our students in good faith. We agree that in exchange for tuition we will give them the opportunity to earn credit toward their degree. And if we make a specific promise in writing, we will honor that. And that, of course, is what is absent here. Can I shift? I realize that the tuition is where the action is. It's a much bigger piece. But to the extent that you're casting your lot with McCudden, it would seem to me that McCudden would be dispositive of the health service fees and the co-curricular fees against you because in McCudden, the court said, yes, they did state a claim relative to those fees. What am I missing? I think that the key difference here is that, and this goes back to the prior question, we in fact have a written document, a tuition fees and related policies bulletin that govern the academic year and explains what the fees were in service of. And unlike in McCudden, where one of the fees that was allowed to continue was paying for access to gyms, which could not be provided after, plaintiffs haven't identified any services that could only be delivered in person and that in fact were not delivered. And something notable about his complaint, which we think Rule 11 required, is that discovery showed in the Posten case that we in fact continued to provide services just in an altered fashion. And so plaintiff is no longer alleging we didn't provide the services. He's only alleging that they were altered. And he doesn't identify any service that he attempted to utilize during the second half or second part of the semester and was unable to utilize. But at most, Your Honor, as you said, that would go to one portion of two distinct fees, not to the far greater tuition issue, where we think that the decision below can be affirmed. If there are no other questions, we would ask this Court to affirm the decision below. Thank you. We'll hear rebuttal. I'd just like to speak to the extent that there were specific facts that might have been important in Renasco that my friend says were not in our complaint here. I think we did cover the bases, and we tracked this in our brief. It's not really what the student's major was. But if that mattered, that's the kind of thing we could cure with amendment, except for the fact that here, the district court precluded us from having this claim at all under the law of the case doctrine. So this kind of ties into, why is this a problem? Well, this is a good example. Now we're moving down this stream here, talking about, well, this allegation wasn't here, and this one wasn't here. That's not the way the district court dealt with this case. The district court says, the Possum case didn't go the student's way. Goodbye. I mean, the words are precluded from bringing this claim. So if there aren't any other questions, I think we've covered all of our issues today. So we would ask that you vacate and reverse, or vacate and remand, or certify the question to the New York Court of Appeals. Thank you. Thank you both, and we'll take the matter under advisement.